IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D
FEB 1 4 2018
ARTHUR JOHNSTON
BY _____ DEPUTY

STRATEGIC TIRE SUPPLY, LLC;      PLAINTIFFS
ACQUISITION 368, LLC;
ACQUISITION 362, LLC; AND
DBA STRATEGIC IMPORTS SUPPLY

VS.      CAUSE NO. 2:18cv20-KS-MTP

EULER HERMES NORTH AMERICA      DEFENDANTS

## COMPLAINT FOR DAMAGES

### *JURY TRIAL DEMANDED*

COME NOW, the Plaintiffs, Strategic Tire Supply, LLC; Acquisition 368, LLC; Acquisition 362, LLC; and d/b/a Strategic Imports Supply, and present this Complaint for breach of contract of insurance in failing to pay amounts owed the Plaintiffs under the policy issued by the Defendant. In support of this and related claims Plaintiffs would show this Honorable Court as follows:

I.

Plaintiffs are limited liability companies organized and existing under the laws of the State of Minnesota with their principal place of business at 3554 Fairway Court, Hopkins, Minnesota 55305.

II.

The Defendant, Euler Hermes North America, is on information and belief a corporation organized and existing under the laws of the State of Maryland with its principal place of business at 800 Red Brook Boulevard, Owings Mills, Maryland 21117. On information and belief, the Defendant, Euler Hermes North America ("Euler Hermes"), may be served through its registered agent for service of process being CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232. Alternatively, Euler Hermes North America may be served through the Mississippi Insurance Commission.

649910     1

III.

## GENERAL BACKGROUND FACTS

Plaintiffs for a number of years purchased trade credit insurance policies from the Defendant for purposes of insuring Plaintiffs' accounts receivable for sales of tires in the United States. Robison Tire Company, Inc. was a purchaser of tires on credit from Plaintiffs and was located in Laurel, Mississippi. On July 14, 2016, Robison Tire Company, Inc. ("Robison Tire") filed a Voluntary Petition for Relief Pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Mississippi, Southern Division being Case Number 16-511A3-KMS on the docket of this Court. On August 14, 2015, Euler Hermes denied the claim of Plaintiffs. Plaintiffs have now exhausted all efforts for collection of the debt through bankruptcy and otherwise from Robison Tire and Euler Hermes continues to deny the claim of Plaintiffs for benefits under the policy even though the policy was specifically written to protect the Plaintiffs from the risk of customers and accounts receivable of Robison Tire purchases of tires on credit were reported to the Defendant on which a premium was paid. Robison Tire then filed to pay for the goods delivered to them and Euler Hermes has refused to pay the claim.

IV.

## JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C. § 1332 as all Plaintiffs and the Defendant are completely diverse. Plaintiffs and the Defendant are organized and exist under the laws of different states and their principle place of business is in different states. The matter in controversy is in excess of $75,000.00. Venue is proper in this district and division because Robison Tire and its bankruptcy which form the basis of the claim of Plaintiffs against the Defendant is located in this district and division. The Defendant, Euler Hermes, is subject to the *in personum* jurisdiction of this Court for

various reasons including its doing business in Mississippi and pursuant to the long arm statute of the State of Mississippi

V.

**FACTUAL BASIS FOR COMPLAINT**

On or about April 25, 2014, Defendant, Euler Hermes North America ("Euler Hermes"), issued Policy Number 5064020 to Acquisition 368, LLC that included Sales Inclusion Endorsement Acquisition making Acquisition 362, LLC d/b/a Strategic Imports Supply shipments covered along with shipments of the named insured, Acquisition 368, LLC. This policy was a renewal of multiple prior policies that Plaintiffs had purchased for a number of years. The effective policy period for this policy was April 1, 2014 through March 31, 2015. A copy of the policy provided by the Defendant to Plaintiffs is attached as Exhibit "1" to this Complaint.

VI.

For years the employee and agent of the Defendant, Euler Hermes, Mike Matulis, was involved in active management of the Euler Hermes policy including the charging of additional premiums for increased credit for particular customers of Plaintiffs including Robison Tire. Matulis performed underwriting work for Euler Hermes frequently obtaining increases in the amount of credit Euler Hermes would allow the Plaintiffs to insure under the Euler Hermes policy. Mike Matulis individually or through others employed by Euler Hermes specifically went to Robison Tire and communicated with Robison Tire in Laurel Mississippi and obtained financial statements and balance sheets as well as income and cash flow statements from Robison Tire in order to underwrite the insurance policy credit limit for Robison Tire under the Euler Hermes policies paid for by Plaintiffs. Euler Hermes' agent and employee, Mike Matulis, contacted Robison Tire and obtained this information for purposes of assessing the credit worthiness of Robison Tire for Plaintiffs and in doing so specifically represented to Robison Tire that providing the requested confidential financial information may allow Euler Hermes

649910                                                3

to establish significantly higher credit lines so that the Plaintiffs would be able to "sell more to [its] customers without additional credit risk." Euler Hermes frequently limited the amount Plaintiffs could sell particular customers including Robison Tire on credit by refusing to increase the amount of insurance coverage Euler Hermes would issue for an account.

VII.

Agent and employee of Defendant, Euler Hermes, Mike Matulis, was fully aware of the manner and methods by which Plaintiffs Strategic Tire and related companies insured by the Euler Hermes policy did business. The accounts receivable of Robison Tire which are the subject of this claim were part of the basis for premiums paid by Plaintiffs to Euler Hermes. Euler Hermes' policy required Plaintiffs to pay a premium for all accounts receivable that were insured. Euler Hermes required regular reporting of the accounts receivable that it insured for Plaintiffs including regular information on the length of time particular accounts paid their bills. The Robison Tire accounts receivable which are the subject of this lawsuit and the claim by Plaintiffs against Euler Hermes were insured by Euler Hermes and premiums were charged and paid based on the Robison Tire accounts receivable that form the basis for the claim and this lawsuit. Mike Matulis was at all relevant times the agent and employee of Euler Hermes. The Defendant, Euler Hermes, is liable for all actions, knowledge and damages caused by Mike Matulis on the basis of *respondeat superior* and due to his actual or apparent authority to bind Euler Hermes. Further, Euler Hermes is charged with all knowledge of Mike Matulis from his dealings with Plaintiffs.

VIII.

Plaintiffs submitted a claim to Euler Hermes for unpaid invoices of Robison Tire along with backup documentation demonstrating the purchase by Robison Tire from Plaintiffs and the delivery of products to Robison Tire by Plaintiffs along with sufficient information to support the claim for unpaid invoices representing accounts receivable insured by Euler Hermes. A true and correct copy of this documentation submitted to Euler Hermes is attached

649910                                4

as Exhibit "2" to this Complaint.  Euler Hermes was made aware of the delayed payment to Plaintiffs of the Robison Tire accounts receivable through the regular reporting process and policy coverage for these overdue accounts had already been triggered.

IX.

On or about October 3, 2017, Plaintiffs received a payment from the Debtor in Possession for Robison Tire in the amount of $31,143.48 representing the entire recovery the Plaintiffs were able to achieve through the bankruptcy process.  A true and correct copy of this check is attached as Exhibit "3" to this Complaint.

X.

On August 14, 2015, by email from Rita Lofton to the President of the Plaintiff companies, David Penn, with a copy to the employee and agent of Euler Hermes who handled the Plaintiffs' account with Euler Hermes, the Defendant denied the claim of the Plaintiffs for the following reasons:

1. The shipments were made via third parties located in China to Apex Shipping Co located in Long Beach, CA and finally to Laurel, MS where the buyer is located; and

2. Unfortunately, the shipments were never in Acquisition 360 **[sic]** USA/Strategic Tire Supply Group's possession or control.  The policy notes that Euler Hermes covers you against credit losses due to non-payment of amounts due from a covered Buyer for Shipments of Covered Products made by you during the Policy Period.

A true and correct copy of this email denial of the claim of Plaintiffs is attached as Exhibit "4" to this Complaint.

XI.

Euler Hermes was promptly notified of the disagreement of Plaintiffs with the coverage position of Euler Hermes.  Euler Hermes was made aware of the involvement of its employee and agent, Mike Matulis, who is an experienced commercial attorney who was in private practice before becoming an insurance agent and the fact that Mike Matulis was aware of the business model of Plaintiffs including Acquisition 368, LLC.  Despite this knowledge and being

649910                                                        5

aware of specific concerns that all shipments of product and the resulting accounts receivable, Euler Hermes and its agent never advised Plaintiffs that the way they did business would result in shipments and resulting accounts receivable not being covered by the Euler Hermes policy.

XII.

Plaintiffs' business model is that tires are purchased by Strategic Tire based on a purchase order from its customer such as Robison Tire. Plaintiffs arrange for the purchase and shipment of the tires directly to the purchaser such as Robison Tire. Plaintiffs own and control the tires purchased from the time they are shipped from China where they are manufactured. Ownership and control of the tires purchased by Robison Tire or others are transferred to Robison Tire during the policy period and for which premiums were charged. The basis for the denial by Euler Hermes of Plaintiffs' claim would render literally all of the credit insurance purchased from Euler Hermes completely worthless and illusory. Euler Hermes has been made aware of this and has not tendered a refund of all policy premiums by Plaintiffs to Euler Hermes or any premium paid whatsoever clearly failing to acknowledge that based on their interpretation of their policy that the credit insurance for which they were paid approximately $500,000.00 failed to insure anything whatsoever.

XIII.

Mike Matulis as employee and agent of Euler Hermes contacted the primary lender of Plaintiffs including Acquisition 368, LLC, and without any permission or consent from Plaintiffs advised US Bank, the primary lender for Plaintiffs, of the credit issue that had arisen with Robison Tire. This was done in the scope of Mike Matulis' employment with Euler Hermes. This communication was willful and intentional and resulted in the destruction of the banking relationship of Plaintiffs with US Bank causing significant damages to the relationship of Plaintiffs with US Bank ultimately resulting in Plaintiffs having to seek alternate banking relationships.

649910                                                6

XIV.

The Euler Hermes policy states that it covers losses due to nonpayment:

> "of amounts due from a covered **Buyer** for **Shipments** of **Covered Products** made by you during the **Policy Period**, ..." Euler Hermes policy page 1.

**Shipments** is defined by the policy on page 11 as follows:

> "**Shipments** mean **Covered Products** which are **Dispatched** by the insured and **Delivered** to a **Buyer**."

On page 10 the policy defines **Dispatched** as follows:

> "**Dispatched** to the **Buyer** means the point in time when **Covered Products** leave the insured's control."

**Delivery** to the buyer is also defined on page 10 of the policy as:

> "**Delivery** to the **Buyer** means the point in time when the legal title to and the risk of loss of the **Covered Products** is transferred to the **Buyer** and the **Covered Products** have left your custody and physical control."

The policy also defines on page 11 **Policy Period**:

> "**Policy Period**, as stated on the **Declaration**, is the period of time during which **Shipments** of **Covered Products** can be **Dispatched** to covered **Buyers** in order to be covered under this Policy."

XV.

Robison Tire was a covered buyer of shipments of covered products made during the Euler Hermes policy period. The tires were covered products and they were dispatched by Plaintiffs and delivered to Robison Tire during the policy period. Robison Tire failed to pay the invoices due to Plaintiffs contained on the table provided on the first page of Exhibit "2" in the total amount of $1,120,880.58. Plaintiffs complied with all of the policy requirements to assure coverage for the Robison Tire accounts receivable.

XVI.

The Euler Hermes policy provides the following imposing duties on the insured regarding accounts that the insured makes the subject of a claim for loss under the policy:

V. CLAIM FILING AND LOSS PAYMENTS

A. <u>Filing a Claim</u>

In order to be entitled to receive a loss payment under the Policy you must comply with all of the following claim filing requirements:

1. File all claims for loss against **Buyers** on a form furnished by us within the required claim filing period:

    a) For claims due to a **Buyer Insolvency**, the earlier of ten (10) days of your learning, or being notified of, a **Buyer Insolvency** or the expiration of the required bankruptcy proof of claim filing period;

    b) For all other claims, no later than the **Maximum Claim Filing Period.**

2. Provide us with an itemized statement showing all transactions and terms of sale for the **Buyer** dating as far back as the earliest unpaid item included in the claim you are filing against the **Buyer.**

3. File with us the entire amount owed to you by the **Buyer** with us, even if this amount is greater than the **Credit Limit** provided by us or qualified by you under the **Discretionary Credit Limit** Endorsement.

4. Provide us with proof that a covered loss has occurred:

    a) For claims due to **Insolvency,** provide us with evidence of the **Insolvency.**

    b) For claims due to **Protracted Default,** provide us with an itemized statement evidencing the **Buyer** is past due.

5. If a **Credit Limit** is cancelled on a **Buyer,** upon our written request and at our discretion, we may require you to file a claim for loss. Noncompliance with this request will result in the forfeiture of a loss payment against that **Buyer.** However, if we require you to file a claim under this paragraph, we will not charge you any collection fees on any amounts collected.

B. <u>Claim Filing General Conditions</u>

1. The amount of the claim filed against the **Buyer** must be greater than the **Non-Qualifying Loss** amount.

2. Upon filing a claim against a **Buyer**, the **Credit Limit** for that **Buyer** for any future **Shipments** will automatically terminate as of the date of your filing.

3. The date of your filing will be the earlier of the date postmarked by a recognized postal carrier or the date your claim filing is otherwise received by us. We will acknowledge receipt of any claim you file with us and provide you with an estimate of the coverage amount available for that claim, within thirty (30) days of receipt of your claim and all supporting documentation. This acknowledgement does not constitute our acceptance of a claim as covered under this Policy or guaranty that we will make a loss payment to you, as described in *Section V.C.*

4. You must at all times:

    a) Promptly provide us with all supporting documentation that we may reasonably request.

    b) In consultation with us, take all reasonable actions to collect the debts of the **Buyer** owed to you and take all reasonable actions required to establish the debts of the **Buyer** owed to you as legal debts.

    c) If, on your request or after consultation with you and outside counsel, we determine that legal action is required to establish or defend the debts, or portions thereof, of the **Buyer** owed to you as legal debts, you must authorize suit or other proceedings and pay court costs, suit filing fees and non-contingent attorney fees within thirty (30) days after our request to you.

    d) Take all actions and sign all documents as we may reasonably request to allow us, at our option, to act directly in all matters and proceedings related to debts of the **Buyer** owed to you.

    If you do not comply with the above requirements we will deem your claim against a **Buyer** as withdrawn.

5. You may not make any agreement or accept any proposals from the **Buyer** that may affect our ability to collect the debts of that **Buyer** without our prior written consent, such consent not to be unreasonably withheld.

6. When you file a claim with us against a **Buyer**, we have the right to:

649910

9

    a)    On your behalf, place that **Buyer** for collection with an attorney or other third party and file suit against that **Buyer**; and

    b)    Endorse, accept, and deposit payments payable to you in our account.

7. If you withdraw a claim upon a **Buyer** or if a claim is deemed withdrawn as provided above, you may not resubmit those debts of that **Buyer** for a loss payment on this Policy unless we agree to such a resubmission in writing.

Strategic Import Supply, Inc. was required, at all times, to attempt collection of the debts owed to it. Had Strategic Import failed in its duty to collect, Euler Hermes would have denied the claim as withdrawn. As such, Strategic Import was forced to retain counsel, attempt collection and file suit against Robison Tire. Strategic Tire incurred attorney fees, filing fees and court costs in an effort to abide by the terms of the insurance policy issued by Euler Hermes.

Moreover, Strategic Tire is obligated to continue its efforts of debt recovery or risk having its claim denied by Euler Hermes. This means Strategic Tire must incur additional attorney fees and costs.

Strategic Tire is duty-bound to recover debts it is owed but cannot do so without Euler Hermes remitting payment for the costs and attorneys fees it has and will continue to incur. Strategic Tire is stuck between being forced to go after debt for Euler Hermes while not receiving any benefits of the insurance policy it has paid for to protect against this very issue.

XVII.

The Euler Hermes policy further provides for their subrogation rights and duties as to collection attempts for debts that are the subject of an insured's claim under the policy:

    D.    <u>Subrogation and Salvage</u>

        1.    Once we pay a loss under this Policy, you will **Subrogate** to us all of your rights, claims, guaranties, security, collateral and defenses against any person or entity with respect to such loss.

2. You agree to sign all papers necessary for us to have such rights and agree to do nothing to prejudice such rights, whether before or after payment by us, and you agree to take all reasonable steps to assist us in collecting the loss.

3. Once we make any loss payments (s) under this Policy, any credit you allow or any amounts received from the **Buyer** against whom you have filed claims or from any other source on the **Buyer's** behalf towards payment of the amounts owed to you, will be shared pro-rata based on our respective interests in the total undisputed amount filed with us, until we are fully reimbursed for the total loss payment and all related costs incurred by us. In determining our respective pro-rata interests, amounts retained by you through the **Per Buyer Deductible** and/or **Coinsurance** shall be included in the calculation, but amounts retained by you through the **Policy Deductible** shall be excluded from the calculation.

4. You must pay the amounts described in *Section V.D.3.* above to us even if the **Buyer** or someone else says that they are to be used differently and even though you participated in the loss through any **Per Buyer** or **Policy Deductible** and/or **Per Buyer Coinsurance**.

E. <u>Collection Fees</u>

We will assess collection fees on the amounts collected from any source subject to the following conditions:

1. For claims filed with us where there is not a **Formal Insolvency** and for which we collect amounts due, either in cash, returned merchandise, future credits or other non-cash compensation, prior to making a loss payment to you;

2. For the uncovered portion of claims filed with us where there is a **Formal Insolvency** and for which we collect amounts due, either in cash, returned merchandise, future credits or other non-cash compensation, prior to making a loss payment to you; and

3. On the uncovered portion of all claims filed with us and for which we collect amounts due, either in cash, returned merchandise, future credits or other non-cash compensation, after making a loss payment to you.

. . .

  F. <u>Insured's Option to Handle Claims</u>

   You have the option of handling the collection, negotiation and litigation of claims filed under this Policy against **Buyers** where there is a **Formal Insolvency**, subject to the following conditions:

   1. You must notify us of your intention to exercise this option at the time you submit your claim form, otherwise we will handle the claim as per the provisions of this Policy.

   2. You must provide us with all forms and information as required in *Section V.A.* and comply with all requirements and conditions in *Section V.B.* and take all reasonable steps to maximize recovery on the claim.

   Once you exercise this option, you may not at a later date return the claim to us to handle, unless we agree in writing to accept the claim.

Because of the unjustified denial of the claim by Euler Hermes, the above quoted provisions regarding collection of the debt were also breached by Euler Hermes. Accordingly Strategic Tire was forced to incur attorneys' fees and expenses to comply with the underlying policy obligation placed on the insured to preserve all of Euler Hermes' rights against a defaulting debtor and protect Euler Hermes' subrogation rights.

XVIII.

Due to the breach of the policy obligations of Euler Hermes to pay the claim and bear the costs of collection of the debt for its own benefit, Strategic Tire has incurred attorneys' fees and other expenses to mitigate the losses after the eroding finances of Robison Tire were known. These attorneys fees and expenses were successful in recovery of about One Million Dollars of the total debts of Robison Tire to Strategic Tire and these efforts were reported to Euler Hermes. Additional attorneys fees and expenses were incurred also generally known to Euler Hermes in order to protect the pre-bankruptcy mitigation recovery and to make the required claims in bankruptcy to obtain the recovery in bankruptcy. The total of these fees and expenses are $47,955.08. Attorneys fees and expenses of $17,216.50 have been incurred in making demand on Euler Hermes and presenting the claims. These amounts are continuing

with fees and expenses required to file this litigation since Euler Hermes has unjustifiably denied the claim of Strategic Tire. Strategic Tire is entitled to recover the attorneys' fees and costs of collection incurred to collect the debt from Robison Tire. These amounts are also due from Euler Hermes to Plaintiffs since these fees and expenses should have been borne under the Euler Hermes policy of insurance as part of the coverage provided.

## XIX.

Plaintiffs have also been damaged because of limitations imposed by Euler Hermes on the amount of credit allowed to customers of Plaintiffs when in reality Euler Hermes was not actually issuing an insurance policy at all according to the reading of the policy provided by Euler Hermes in its denial. This action arbitrarily limited profits that Plaintiffs were able to make from sales which would have otherwise been made to those customers for whom Euler Hermes refused to extend coverage for credit insurance.

## XX.

Plaintiffs have also been damaged in the amount of $1,089,737.10 being the net amount of the unpaid invoices for Robison Tire after reduction for the amount of payment received from the Debtor in Possession through the bankruptcy proceeding.

## XXI.

## **BASIS FOR ENTITLEMENT TO REMEDIES**

Plaintiffs are entitled to recovery because Euler Hermes has breached its contract of insurance and failed and refused to honor that contract. Euler Hermes is estopped from asserting the business model of Plaintiffs as a basis for its denial as Euler Hermes and its agent and employee were aware of exactly how Plaintiffs purchased, shipped and sold their goods. Euler Hermes, through its agent, Mike Matulis, fraudulently misrepresented the effectiveness of coverage and induced Plaintiffs to purchase and to continue purchasing insurance through him to collect commissions on the sale of insurance he knew or should have

known was worthless and illusory. Euler Hermes is liable for all actions of Mike Matulis as their agent and employee and charged with all knowledge he had.

XXII.

Plaintiffs are also entitled to recover damages for the interference with the private contractual relationship between Plaintiffs and US Bank by the agent and employee of Euler Hermes, Mike Matulis, informing US Bank of private and confidential information revealed to Mike Matulis only in his capacity as an agent accepting a claim for the lack of payment by Robison Tire of accounts receivable. Such actions were intentional, willful and designed to damage the Plaintiffs' business and did, in fact, damage the Plaintiffs' business and reputation.

XXIII.

Plaintiffs are entitled to recover the amount of attorneys fees expended in seeking recovery of the accounts receivable from Robison Tire through the bankruptcy proceeding and otherwise that should have been borne by the Euler Hermes policy as provided by the Euler Hermes policy.

XXIV.

Plaintiffs are entitled to damages for the bad faith denial by Euler Hermes of the claim of the Plaintiffs.

XXV.

**EXTRACONTRACTUAL AND/OR PUNITIVE DAMAGES**

Plaintiffs are also entitled to extracontractual and/or punitive damages because of the willful, wanton and reckless disregard of Euler Hermes in issuing, maintaining, calculating and charging premiums and denial of coverage for the covered claim arising out of the Robison Tire default. Euler Hermes has acted in such a way as to willfully and wantonly inflict damage on Plaintiffs and in reckless disregard of clear policy provisions and attempting to provide an insurance product using an interpretation that renders the insurance product virtually

worthless. Euler Hermes failed to act in good faith did not deal fairly with Plaintiffs regarding the subject policy premiums they charged or the claim made. Additionally, there is insufficient basis in fact or in law for the decision of Euler Hermes with regard to the decision to deny the claim of Plaintiffs and Euler Hermes did not adequately investigate the claim.

XVI.

Plaintiffs request that this Court order such other and further relief as justice and equity require in order to provide redress for the wrongs, breaches of contract, intentional acts and interference and reckless disregard and wanton conduct of the Defendant, Euler Hermes.

WHEREFORE, based upon the foregoing, Strategic Tire Supply, LLC; Acquisition 368, LLC; Acquisition 362, LLC; and d/b/a Strategic Imports Supply respectfully requests this Honorable Court award the following relief:

a) Damages for breach of the insurance contract for the insured accounts receivable for Robison Tire in the amount of $1,089,737.10 with interest from the date payment should have been made until the judgment is entered;

b) Attorneys fees and collection expenses in the amount of $47,955.08 that should have been paid as part of the coverage under the Euler Hermes policy and $17,216.50 for making demands on Euler Hermes due to its unjustified denial of the claims. The total attorneys fees and expenses for which demand is currently made is $65,171.58 plus all additional fees and expenses to be shown at trial required to pursue this litigation and make Euler Hermes pay amounts clearly owed under the policy;

c) Damages in the amount shown at a trial of this matter resulting from actions of Euler Hermes and its agent in communicating confidential information to the lender of Plaintiffs and the unwarranted limitations on sales by Plaintiffs based on the refusal to extend credit insurance where in reality the insurance coverage was non-existent and illusory, as well as any refund of premiums paid by Plaintiffs to Euler Hermes for worthless insurance;

    d)    Damages in an amount to be shown at trial for the bad faith actions and denial of Euler Hermes of the claim of Plaintiffs including punitive damages to deter future similar conduct by the Defendant, including attorneys fees for the filing and prosecution of this claim made necessary by the bad faith of the Defendant; and

    (e)    All such other and further relief this Court deems just and proper.

THIS, the __13th__ day of February, 2018.

                Respectfully submitted,

                STRATEGIC TIRE SUPPLY, LLC;
                ACQUISITION 368, LLC;
                ACQUISITION 362, LLC; AND
                D/B/A STRATEGIC IMPORT SUPPLY, LLC

By: _____
                DAVID M. OTT, MSB # 3948

OF COUNSEL:
David M. Ott, MSB No. 3948
William A. Whitehead, Jr., MSB No. 10152
BRYAN NELSON P.A.
Post Office Drawer 18109
Hattiesburg, MS  39404
Phone:  (601) 261-4100
Fax:    (601) 261-4106
E-mail:  dott@bnlawfirm.com
         wwhitehead@bnlawfirm.com